```
                                              FILED
                                              NOV 23 2005
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK          CLERK, US DISTRICT COURT, WDNY
                                              CELEBRATING 100 YEARS OF SERVICE
UNITED STATES OF AMERICA,                        TO WESTERN NEW YORK
                                                      1900-2000
            -v-                        :

MICHAEL GEIGER,
                                       :   00-CR-09-S
                  Defendant.
                                       :
_____:
```

## PLEA AGREEMENT

The defendant, MICHAEL GEIGER, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.   THE PLEA AND POSSIBLE SENTENCE

1.  The defendant agrees to plead guilty to Count One of the Indictment which charges a violation of Title 18 United States Code, Section 371, conspiracy to commit wire fraud (telemarketing fraud) which carries a maximum possible sentence of a term of imprisonment of five (5) years, a fine of $250,000, or both, a mandatory $50 special assessment and a term of supervised release of up to three (3) years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that the Court may require restitution in the amount of approximately $3,600 to be paid to victims of Advanced Distributing (Advanced) as part of the sentence, pursuant to Sentencing Guidelines §5E1.1 and Title 18, United States Code, Section 3663.

3. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to two (2) years without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in paragraph 1 of this agreement.

## II. SENTENCING GUIDELINES

4. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984), and that the 1994 edition of the Sentencing

Guidelines Manual (turquoise cover) will be used to determine the defendant's offense level and criminal history.

## ELEMENTS OF THE CRIME

5. The defendant understands the nature of the offense set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

> (a) That two or more persons entered into the unlawful agreement charged in the indictment,
>
> (b) that the defendant knowingly and willfully became a member of the conspiracy,
>
> (c) that one of the members of the conspiracy committed at least one of the overt acts charged in the indictment and that the overt act was committed to further some object of the conspiracy.

## FACTUAL BASIS

6. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

> In December of 1992, the defendant and his co-defendant, Peter Gerace, incorporated Advanced Distributing, Inc. ("Advanced"). In 1993 and 1994, they hired salespeople to act both as

front sales people and reload salespeople to attempt to sell marked up products, including vitamins, water filters, cleaning products, and skin and hair care products.

Thereafter, these salespeople made interstate phone calls to sell these products, using a pre-printed "pitch" contained in a "pitch book" which the defendant and his co-defendant adopted.

A portion of the "pitch" contained in the "pitch book" was an instruction to represent to a potential customer that he or she had been selected to participate in a "promotion," and as a result would be receiving one of four premiums, which were, for example, a new Cadillac, a $5,000 cashier's check, a big-screen television or a vacation for two of either four days and three nights or three days and two nights.

Although the initial "pitch" specifically mentioned the "possibility" of either the Cadillac or the $5,000 cashier's check, which were the two best potential premiums, the "pitch book" also contained various rebuttal representations which Advanced's sales personnel were to utilize if a potential customer was hesitant to purchase.

The "pitch book" contained a rebuttal entitled "Justifying the Price." That rebuttal which was knowingly adopted for use by Advanced's salespeople by the defendant and his codefendant, included a statement to a potential customer that:

> You are **absolutely guaranteed** one of the biggest and best premiums we are giving out for the entire year"

The defendant and his codefendant knowingly adopted this "Justifying the Price" rebuttal and also knew that the statement quoted above

-4-

from that rebuttal was false and directed their employees to utilize such statement when necessary in order to induce potential customers to make product purchases.

In fact, a potential customer's likelihood of receiving either a new Cadillac or the $5,000 cashier's check was less than for the other two premiums.

The defendant agrees that, in furtherance of his agreement with his codefendant, he and his codefendant caused members of Advanced's sales staff to use the false statement from the "Justifying the Price" rebuttal in the course of making interstate sales calls to prospective customers and further agrees that on an unknown date in 1994, as a part of the conspiratorial agreement between the defendant and his co defendant (and among the defendant, his co-defendant and Brandon DelPrince, with whom the defendant also conspired), DelPrince called an unidentified out-of-state customer, and made the statements summarized in overt act Number 3 (page 4) of the indictment.

### BASE OFFENSE LEVEL

7.  The government and the defendant agree that Guidelines § 2F1.1(a) applies to the offense of conviction and provides for a base offense level of 6.

## SPECIFIC OFFENSE CHARACTERISTICS
## USSG CHAPTER 2 ADJUSTMENTS

8.  The government and the defendant agree that the following specific offense characteristics apply to the offense of conviction:

>   (a) §2F1.1(b)(1)(B): the total loss (including relevant conduct) was in excess of $2,000 namely approximately $3,600 and thus there is a one (1) offense level increase.
>
>   (b) the two level increase pursuant to Guidelines § 2F1.1(b)(2) because the defendant's offense involved a scheme to defraud more than one victim.

## USSG CHAPTER 3 ADJUSTMENTS

9.  The government and the defendant agree that because the defendant was an organizer, manager, and supervisor in the criminal activity charged in Count One of the indictment, his offense level must be increased four (4) levels pursuant to Guidelines § 3B1.1(c).

## ADJUSTED OFFENSE LEVEL

10. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 13.

## ACCEPTANCE OF RESPONSIBILITY

11. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), which would result in a total offense level of 11.

## CRIMINAL HISTORY CATEGORY

12. It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13. It is the understanding of the government and the defendant that, with a total offense level of 11 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 8 to 14 months, a fine of $2,000 to

$20,000, and a period of supervised release of up to three (3) years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in paragraph 1 of this agreement.

14. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement.

15. The defendant reserves the right to move for a one (1) level downward departure pursuant to Guidelines § 5K2.0, on the basis that the defendant's positions in his businesses are extraordinary circumstances justifying such a departure to the defendant's offense level, and the government reserves the right to oppose the defendant's motion.

16. Neither party will advocate or recommend the application of any other Guideline, except as specifically set forth in the preceding paragraph of this agreement and the defendant will not advocate or recommend a departure greater than one (1) level. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations.

17. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw his plea of guilty based on the sentence imposed by the Court.

### III. GOVERNMENT RIGHTS AND RESERVATIONS AND DEFENDANT'S AGREEMENTS

18. At sentencing, the government agrees that, in the event the Court denies the defendant's motion for a downward departure, it will:

>    a. Take no position as to the specific sentence within the Guidelines range determined by the Court; and
>
>    b. If the Court determines that the Guidelines range is one that falls with "Zone C" of the Sentencing Table, not to object to the Court imposing a sentence that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the Schedule in Guidelines § 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment.

19. At sentencing:

>    a. the defendant agrees that, in the event the Court grants the defendant's motion for a downward departure, or sua

*sponte* grants a downward departure, the government may urge the Court to impose any sentence within the Guidelines range to which the Court departs; and

    b. the government agrees that, not withstanding the preceding subparagraph, in the event the Court grants the defendant's motion for a downward departure, or *sua sponte* grants a downward departure that places his offense level in Zone B, the defendant remains free to urge the Court to impose a sentence described under either Guidelines §§ 5C1.1(c)(2) or 5C1.1(c)(3).

20. At sentencing, the defendant further agrees that the government may urge the Court to impose restitution and/or impose a fine up to the maximum fine range for the offense level determined by the Court, and that the government may suggest a payment method for any restitution or fine imposed, and may urge the Court to adopt the method so suggested.

the defendant is actually innocent of the crime to which the guilty plea has been entered in this case. The defendant has discussed this right with defense counsel, and the defendant knowingly and voluntarily waives the right to make such a motion and to have such DNA testing performed on any such items the government may have or may obtain in the future. The defendant fully understands that because the defendant is waiving these rights, any physical evidence that may exist or be found to exist in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

## IV. APPEAL RIGHTS

23. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal, modify pursuant to Title 18, United States Code, Section 3582(c)(2) and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section II, Paragraph 13 above, notwithstanding the manner in which the Court determines the

sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section I of this agreement.

24. The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

25. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section II, Paragraph 13 above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

V. TOTAL AGREEMENT AND AFFIRMATIONS

26. This plea agreement represents the total agreement between the defendant, MICHAEL GEIGER, and the government. There

are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

                                            KATHLEEN M. MEHLTRETTER
                                            Acting United States Attorney
                                            Western District of New York

BY: _____
      ANTHONY M. BRUCE
      Assistant U. S. Attorney

Dated: November 23, 2005

I have read this agreement, which consists of 15 pages. I have had a full opportunity to discuss this agreement with my attorney, Joseph M. LaTona, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
MICHAEL GEIGER
Defendant

Dated: November 23, 2005

_____
JOSEPH M. LaTONA, ESQ.
Attorney for the Defendant

Dated: November 23, 2005