UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                  Plaintiff,                 **NOTICE OF MOTION**

vs.

                                                     Case No. 00-CR-009S

PETER GERACE and MICHAEL GEIGER,

                                Defendants.

S I R S :

             PLEASE TAKE NOTICE that upon the attached affidavit of Paul J. Cambria, Jr., Esq. and Joseph M. LaTona, Esq., defendants Peter Gerace and Michael Geiger will move this Court, at a term to be set by this Court, for the following relief:

             (1)      A stay of execution of sentence pending the defendants' appeal to the United States Court of Appeals for the Second Circuit pursuant to 18 U.S.C. §3143(b)(1) and Rule 38 of the Federal Rules of Criminal Procedure; and

             (2)      Such other and further relief as this Court deems just and proper.

DATED:      September 15, 2006              Respectfully submitted,
                 Buffalo, New York

                                             LIPSITZ GREEN SCIME CAMBRIA LLP
                                             PAUL J. CAMBRIA, JR., ESQ.
                                             Attorneys for Defendant,
                                                PETER GERACE
                                             Office and Post Office Address
                                             42 Delaware Avenue, Suite 120
                                             Buffalo, New York 14202-3924
                                             (716) 849-1333

                                             JOSEPH M. LaTONA, ESQ.
                                             Attorney for Defendant,
TO:     TERRENCE P. FLYNN, ESQ.                 MICHAEL GEIGER
         United States Attorney for the               Office and Post Office Address
         Western District of New York               716 Brisbane Building
         138 Delaware Avenue                      403 Main Street
         Buffalo, New York 14202                 Buffalo, New York 14203
         Attn:   ANTHONY J. BRUCE, ESQ.        (716) 842-0416
                 Assistant United States Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

                              Plaintiff,

              vs.

PETER GERACE and MICHAEL GEIGER,

                              Defendants.

───────────────────────────────

**AFFIDAVIT**

Case No. 00-CR-009S

STATE OF NEW YORK    )
COUNTY OF ERIE       ) ss:
CITY OF BUFFALO      )

      PAUL J. CAMBRIA, JR. and JOSEPH M. LaTONA, being duly sworn, depose and state as follows:

      1.      We are attorneys at law duly licensed to practice in the State of New York and the Western District of New York.  Paul J. Cambria, Jr. is a partner with the law firm of Lipsitz Green Scime Cambria LLP, with offices located at 42 Delaware Avenue, Suite 120, Buffalo, New York, whose office represents the appellant, Peter Gerace, on various post-conviction matters, including the appeal of his sentence.   Joseph M. LaTona has an office located at 403 Main Street, 716 Brisbane Building, Buffalo, New York, and represents the appellant, Michael Geiger, on various post-conviction matters, including the appeal of his sentence.

# I

## INTRODUCTION

2.      This affidavit is submitted in support of Mr. Gerace's and Mr. Geiger's motion for a stay of execution of sentence pending appeal pursuant to 18 U.S.C. §3143.

3.      On January 11, 2000 the defendants were named in a one count indictment charging a conspiracy to engage in wire fraud in violation of 18 U.S.C. §371 as it relates to 18 U.S.C. §1343.  The indictment accused the defendants of operating a fraudulent telemarketing company, Advanced Distributing.

4.      Subsequently, on January 14, 2000, Mr. Gerace and Mr. Geiger appeared before former Magistrate/Judge Carol E. Heckman and pled not guilty.  Mr. Gerace and Mr. Geiger were both released on their own recognizance with pre-trial supervision.

5.      Mr. Gerace maintained compliance with his conditions of supervision and reported as directed.  He was subsequently removed from pre-trial supervision as a condition of his bail on August 28, 2001.

6.      Mr. Geiger maintained compliance with his conditions of supervision and reported as directed.  On March 26, 2002 he was removed from pre-trial supervision.

7.      On November 23, 2005, Mr. Gerace and Mr. Geiger appeared before the Honorable William M. Skretny, United States District Judge, and pled guilty to the indictment. Mr. Gerace and Mr. Geiger remained released on their own recognizance until their sentencing on June 26, 2006.

## II

## APPLICABLE LAW REGARDING
## RELEASE PENDING BAIL

8.      Mr. Gerace and Mr. Geiger respectfully ask that the Court grant their

release on their own recognizance pending the appeal pursuant to Title 18 U.S.C. §3141(b)(1).

Section 3143 reads, in relevant part:

(b)      Release or detention pending appeal by defendant.

(1)      Except as provided in paragraph (2), the judicial
officer shall order that a person who has been found
guilty of an offense and sentenced to a term of
imprisonment, and who has filed an appeal or a
petition for a writ of certiorari, be detained, unless
the judicial officer finds—

(A)      by clear and convincing evidence that the
person is not likely to flee or pose a danger
to the safety of any other person or the
community if released under section 3142(b)
or (c) of this title; and

(B)      that the appeal is not for the purpose of
delay and raises a substantial question of
law or fact likely to result in—

(i)      reversal,

(ii)      an order for a new trial,

(iii)      a sentence that does not include a
term of imprisonment, or

(iv)      a reduced sentence to a term of
imprisonment less than the total of
the time already served plus the
expected duration of the appeal
process.

9.      In <u>United States v. Randell</u>, 761 F.2d 122 (2d Dept. 1985), the Second Circuit advised that before a district court may grant bail pending appeal, it must make the following determinations:

(1)     that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2)     that the appeal is not for purpose of delay;

(3)     that the appeal raises a substantial question of law or fact; and

(4)     that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.

10.     For the reasons set forth below, defendants Gerace and Geiger respectfully assert that they satisfy the factors set forth above and that, therefore, the Court should grant them a stay of execution of sentence pending appeal.

**A.      Mr. Gerace Is Not Likely to Flee and
Does Not Pose a Danger to the Safety
of Any Person or the Community.**

11.     Defendant Gerace clearly does not present a flight risk or any danger to the safety of any other person or the community.

12.     Significantly, Mr. Gerace has been released on his own recognizance, without incident, since January 14, 2000.

13.     Furthermore, he has attended every required court appearance, including his sentencing. These facts alone establish that he is not likely to flee.

4

14.     Peter Gerace was born in Buffalo on April 15, 1967 and has resided in the Buffalo area his entire life.

15.     Mr. Gerace was married in 1996 in Buffalo, New York to the former Deborah Schmitt.  They were subsequently separated in May of 2003 and divorced in June 2004. They had one son together, Peter Gerace, III, age five, who resides with Mr. Gerace's ex-wife in East Amherst, New York.

16.     Mr. Gerace has indicated that although he and his ex-wife are divorced, they continue to maintain a very good relationship and spend a significant amount of time together.  They are currently in the process of considering getting back together.

17.     Mr. Gerace is very involved in his son's life.  He spends a considerable amount of time with him on a regular basis.

18.     Mr. Gerace is active in Pietro's Restaurant in Clarence, New York, a restaurant that is owned by his mother.

19.     Mr. Gerace is also the general manager of Pharaoh's Gentleman's Club located in Cheektowaga, New York.

20.     Furthermore, Mr. Gerace is co-owner of Clear Alternative of WNY d/b/a G&G Petroleum and his business partner is Michael Geiger.  They are equal partners in this enterprise which operates a gasoline service station located at 1543 Niagara Street in Buffalo, New York.  Clear Alternative of WNY was incorporated in New York State on October 27, 1993.  Mr. Geiger handles the day-to-day affairs of the business and Mr. Gerace assists during periods when Mr. Geiger may be out of town.

21.     Clearly, he has strong family and business ties to the Buffalo area of western New York.

22.     Significantly, Mr. Gerace has <u>no</u> criminal history.

23.     Therefore, based upon the numerous and uncontroverted facts set forth above, defendant Gerace has established by clear and convincing evidence that he is not likely to flee, nor to pose a danger to the safety of another person or the community.

**B.      Mr. Geiger Is Not Likely to Flee and
         Does Not Pose a Danger to the Safety
         of Any Person or the Community.**

24.     Defendant Geiger clearly does not present a flight risk or any danger to the safety of any other person or the community.

25.     Significantly, Mr. Geiger has been free on his own recognizance without incident since January 14, 2000.

26.     Furthermore, he has attended every required court appearance, including sentencing.  These facts alone establish that he is not likely to flee.

27.     Mr. Geiger is a lifelong resident of Western New York, having been born on October 28, 1967.  He is a 1985 graduate of St. Joseph's Collegiate Institute in Kenmore, New York.

28.     On June 12, 1993 Mr. Geiger married Lisa Abbott.  The Geigers have five children -- Marissa, age 10; Michael, Jr., age 9; McKenna, age 8; Maren, age 5; and Mailey, age 3.

29.     As reflected in the Probation Department report, Mr. Geiger is either the sole owner or part-owner of approximately twelve different business entities situated in Western New York.

30.     The nature and extent of Mr. Geiger's involvement is fully set forth in his pre-sentence motion for a downward departure pursuant to <u>United States v. Milikowsky</u>, 65 F.3d 4 (2d Cir. 1995).

31.     Unquestionably, Mr. Geiger has strong family and business ties to Western New York.  Significantly, he has no prior criminal convictions.

32.     Accordingly, it is respectfully submitted that defendant Geiger has established by clear and convincing evidence that he is not likely to flee, nor does he pose a danger to the safety of any other individual or the community at large.

**C.     The Appeal Is Not Being
        Brought for the Purpose of Delay.**

33.     The appeal of the defendants' judgments of conviction is not being brought for the purpose of delay, but rather in good faith.

**D.     The Appeal Raises Substantial
        Questions of Law and Fact.**

34.     Mr. Gerace and Mr. Geiger respectfully contend that their appeal raises substantial questions of law and fact.

35.     In <u>United States v. Randell</u>, <u>supra</u>, the Second Circuit reviewed the "substantial issue of law and fact" prong and advised that subsection (b)(2) should <u>not</u> be read literally to require that a court condition bail upon a finding that its own judgment is likely to be reversed on appeal:

> We agree with the court in Miller that the phrase "likely to result in reversal or an order for a new trial" cannot reasonably be construed to require the district court to

7

predict the probability of reversal . . . .   Instead, the language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal.

753 F.2d at 23. Though clearly congress intended section 3143 to reverse the then prevailing presumption in favor of post-conviction bail, see S. Rep. No. 225, 98th cong., 2 Sess. 26, reprinted in 1984 U.S. Code Cong. & Ad. News 2, 29, 23 we do not [*125] believe it intended either to eliminate bail pending appeal or make such bail dependent upon the "willingness of a trial court to certify" that it is likely to be reversed. Miller, supra, 753 F. 2d at 23.

A more appropriate interpretation of subsection (b) (2) thus requires [**6] a district court to determine first whether any question raised on appeal is a "substantial" one. The Miller court defined a substantial question as "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." 753 F. 2d at 23. Giancola held that a substantial question "is one of more substance that would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." 754 F.2d at 901. Handy defined substantial as "fairly debatable." 753 F. 2d at 1490. We do not believe that these definitions of "substantial" differ significantly from each other, but if we were to adopt only one, it would be the language of Giancola. Id. at 125 – 125.

36.    Accordingly, the Court is not asked to condition a stay upon a finding that its own judgment is likely to be reversed on appeal, but, rather, that the defendants' appeal of the Court's sentencing is not frivolous, thereby satisfying §3143(b)(2).

37.    The defendants respectfully make several contentions warranting this Court's determination that their appeal is not frivolous:   that §3A1.1(b)(1) was improperly applied resulting in a two-level increase to the guideline calculation based upon the victims being "vulnerable" solely because of a generalization that elderly individuals are "vulnerable victims"; that the failure to grant a one-level downward departure pursuant to §5K2.0 on the basis that Mr. Gerace's and Mr. Geiger's positions in their businesses are extraordinary circumstances was

improper; and that restitution in the amount of $271,928.00 joint and several with each defendant, Brandon DelPrince and Anthony Gugino, was improperly imposed.

### 1.    The application of §3A1.1(b)(1).

38.    A two-level increase in the guideline calculations for defendants Gerace and Geiger was applied by this Court even though neither defendants Gerace nor Geiger's plea agreements contemplated that §3A1.1(b)(1) would apply resulting in a two-level increase to the guideline calculation based on the victims being "vulnerable."

39.    The Court followed the recommendation of the probation department's pre-sentence report [PSR] which indicated the following:

> Victim-related adjustments: pursuant to §3A1.1(b)(1) there is a two-level increase as the majority of victims defrauded by the defendant's company were elderly and considered unusually vulnerable due to their age.

[Gerace PSR, ¶ 24, p. 7].

40.    This statement by the probation department that a "majority" of the victims were elderly is inconsistent with its other claim in the PSR where it was stated that "some of these victims were elderly" and "may be considered unusually susceptible to this type of scheme" [PSR, ¶ 17, p. 5].

41.    While the probation department suggested that the two-level increase should apply because either some or a majority of the victims were elderly, the probation department failed to set forth any specific details which would support the argument that any specific individual victim was vulnerable under the statute.

9

42.     In <u>United States v. Crispo</u>, 306 F.3d 71 (2d Cir. 2002), the Court explained

the application of §3A1.1(b).  The Court explained that in order for §3A1.1(b) to apply a specific

inquiry must be made of the individual attributes of the victim or victims.  <u>Id</u>. at 83.  The Court

further held that broad generalizations about victims based on their membership in a class [such

as being elderly] are discouraged:

> In general, for §3A1.1(b) to apply, the victim of the crime
> must have been "particularly vulnerable" because of his
> "substantial inability to avoid the crime."  <u>Id</u>. at 51.
> Accordingly, the vulnerability inquiry focuses on the
> victim's ability to protect himself from crime, not the
> likelihood of harm to the victim if the crime is completed.
> <u>Id</u>. at 49-50.  In addition, when evaluating whether a victim
> is particularly vulnerable, it is not sufficient to decide that
> the individual is more vulnerable than others.  Rather, the
> inquiry should concentrate on whether additional deterrents
> are necessary to protect such a victim.  <u>Id</u>. at 51.  Because
> the inquiry explores individual attributes, broad
> generalizations about victims based on their membership in
> a class are discouraged.  Yet, class attributes can be
> sufficient if they make the finding of vulnerability beyond
> dispute.  Compare, <u>United States v. Drapeau</u>, 110 F.3d 618,
> 620 (8th Cir. 1997) (finding one-year old abuse victim
> vulnerable due to age), and <u>United States v. Boise</u>, 916
> F.2d 497, 506 (9th Cir. 1990) (finding six-week old infant
> "unusually vulnerable"), with <u>United States v. Fosher</u>, 124
> F.3d 52, 56 (1st Cir. 1997) (rejecting district court's
> assumption that 62-year old woman was unusually
> vulnerable due to age), and <u>United States v. Tissnolthtos</u>,
> 115 F.3d 759, 761-62 (10th Cir. 1997) (unwilling to find
> 71-year old victim particularly vulnerable due to age
> alone).

<u>Id</u>. at 83.

43.     Similarly, this Court should not have concluded that §3A1.1(b)(1) applies

merely because the probation department suggested that a "majority" of the victims (or "some"

of the victims) defrauded were "elderly" and therefore considered unusually "vulnerable due to

their age."  In order for the two-level adjustment to apply a particularized finding as to specific individuals which would suggest that a particular person was vulnerable at the time of the alleged fraud which occurred in the early 1990's should have been made.  It is not enough to conclude that because certain victims were elderly they are therefore vulnerable victims under §3A1.1(b)(1).

44.    Other courts have similarly held that the vulnerable victim sentence enhancement should be applied only on a basis of individualized findings as to vulnerability of particular victims, rather than generalization based on membership in a class.  See, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166 (1969); United States v. Morris, 350 F.3d 32 (2d Cir. 2003); United States v. McCall, 174 F.3d 47 (2d Cir. 1998) ("the correct test [for vulnerability] calls for an examination of the individual victims' ability to avoid the crime rather than their vulnerability relative to other potential victims of the same crime"); United States v. Sangemino, 136 F.Supp. 2d 293 (S.D.N.Y. 2001); United States v. Feldmen, 83 F.3d 9, 15 (1st Cir. 1996) (In order to warrant a finding of unusual vulnerability, there must be some evidence, above and beyond mere membership in a large class, that the victim possessed a special weakness that the defendant exploited); United States v. Zats, 298 F.3d 182 (3d Cir. 2002); United States v. Bolden, 325 F.3d 471 (4th Cir. 2003) (It is insufficient for a sentencing court to find only that a victim is elderly or physically infirm, it must also determine that the victim's vulnerability or susceptibility facilitated the defendant's crime in some manner).

45.    In other words, the probation department failed to provide any factual basis concerning any specific victim which would warrant the two-level increase pursuant to §3A1.1(b)(1).  Instead, the probation department has seemingly made a broad generalization that elderly individuals are "vulnerable victims" as opposed to exploring individual attributes.

11

46.     The probation department prepared an "Addendum to the Presentence Report" dated June 12, 2006, which pertains to the issue of the application of §3A1.1(b).  The addendum to the probation report referenced five individuals who testified before the Grand Jury; only one of which was arguably "elderly."  Specifically, the addendum referenced a Miss Saundra Durham, 44 years old; Miss Elizabeth Gifford, 84 years old; Jocelyn Hulett, 52 years old; Miss Carol Morgan, 67 years old; and Jamesetta Perry, 54 years old.

47.     However, the probation department failed to establish a factual basis in either the original probation report or in the updated report that a "majority" of the victims were elderly.  Even if it were established that a majority of the victims were elderly that fact alone does not trigger the application of §3A1.1(b)(1). [Def. Obj., 6/5/06, p 3; citing to United States v. Crispo, 306 F.3d 71 (2d Cir. 2002)].

48.     The probation department claimed that "other victims involved in this case became vulnerable because the company and its employees repeatedly contacted them knowing they had purchased a product initially and would send additional money in an effort to win one of the so-called awards being offered such as the Cadillac, cash or other awards they were led to believe they would win" [Rev. PSR, 6/12/06, p. 21].  This theory was not set forth in the original probation report.

49.     The probation department in its addendum references the above individuals and claimed that, in certain circumstances, those individuals were contacted on more than one occasion and asked to purchase products from the company.  However, the mere fact that those individuals may have engaged in multiple transactions with Advanced Distributing does not reason that they were "vulnerable victims" pursuant to Guidelines §3A1.1(b)(1).

50.     The Addendum does not establish the individual attributes of those individuals at the time of the alleged conversations with the company and what it was about those individuals specifically that impacted on their ability or inability to protect themselves from the crime.  See, United States v. Crispo, 306 F.3d 71, 83 (2d Cir. 2002).  The fact that individuals engaged in multiple transactions does not by itself render them vulnerable.

51.     For example, according to the Addendum, Ms. Jocelyn Hulett was apparently awarded a vacation package after sending the company $599 but she was unable to use the vacation package because she had recently undergone a liver transplant [Rev. PSR, 6/12/06, p. 20].  She was then informed of other prizes.  Id.  The Addendum then indicated that, "she indicated that she was contacted approximately ten or twelve additional times by Brandon Del Prince but declined to order any additional product or send any money."  Id. [emphasis added].

52.     Not only does this information fail to set forth any individual attributes of Ms. Hulett that would render her "vulnerable" there are no specifics provided detailing exactly what was said to her or the pitch used, for example, in enticing Ms. Hulett to make a purchase.  More importantly, the Addendum relates that when she was allegedly contacted numerous times she declined to purchase additional products and she did not send additional money.  This information contradicts the theory that merely because an individual was contacted numerous times they are vulnerable.  When Ms. Hulett was contacted numerous times she did not make a purchase or send money.

53.     The probation department's request that the Court apply §3A1.1(b) based merely on the fact that individuals referenced above may have engaged in multiple transactions

should have been denied.  That generalization is similar to the claim that elderly people based on their age alone renders them "vulnerable victims" under the statute.

54.     This Court should have not concluded that §3A1.1(b)(1) applies merely because the probation department has suggested that a "majority" of the victims (or "some" of the victims) defrauded were "elderly" or because some of the individuals engaged in multiple transactions.

55.     Accordingly, defendants respectfully submit that §3A1.1(b)(1) is inapplicable to this matter.  In the alternative, defense counsel respectfully submits that this Court should first have conducted a hearing relative to this matter to determine the applicability of §3A1.1(b)(1).

### 2.     Downward Departure for Economic Harm.

56.     The defendants sought a downward departure of one level on the basis that their positions in various businesses were extraordinary circumstances justifying such a departure.  The Plea Agreements permitted both defendants to move for such downward departure and the Government reserved the right to oppose that motion.

57.     Defendant Gerace submitted to this Court letters which, in addition to defense counsel's own observations, established that any incarceration would have a direct and significant debilitating effect on the businesses defendant Gerace is associated with.  From those letters and counsels' own investigation, it is clear that defendant Gerace's knowledge and experience is critical to the future of these companies especially with respect to Pharaoh's Gentleman's Club.  Defendant Gerace is also very important to the success of Pietro's Restaurant and his mother has indicated that she relies upon him heavily for many aspects of the business.

14

She has explained in her letter to the Court that defendant Gerace is the only individual at Pietro's who can perform many of the business tasks.

58.     For instance, Mrs. Gerace explained that defendant Gerace takes care of the bookwork, sales tax, advertising, insurances, etc., and that neither she nor her husband have the knowledge to complete those tasks.  She further explained that it would be a hardship for her to run the business without defendant Gerace.

59.     Similarly, Donald Parrino, a co-owner of Pharaoh's Gentleman's Club has explained that defendant Gerace acts as the general manager and has described him as the "heart and soul" of the future of the business.  Mr. Parrino explained that defendant Gerace "handles all the bookkeeping, accounting, tax payments, banking, supply ordering, advertising and scheduling needed repairs."

60.     Mr. Parrino further indicated that defendant Gerace is the only individual within the company with the experience and knowledge to keep the company in business:

> He is the only person within the company who has knowledge and vast experience to keep the company running.  Without Peter I fear for the future of Pharaoh's.  I am 70 years old and my hours limited.  Peter does so much for the company.  He handles the bookkeeping, accounting, tax payments, banking, supply ordering, advertising, scheduling and needed repairs, etc. during the day and manages the club in the evenings where he is responsible for over 100 workers.

61.     Finally, Mr. Parrino has explained that many workers and their families depend on the business:

> These workers and their families depend on the success of this company.  Peter Gerace is the heart and soul of its future.

15

62.     As stated above, Mr. Geiger is either the sole owner or part-owner of twelve different businesses in Western New York.  The probation report contained a summary of each business entity, including his daily involvement with G&G Petroleum, a service station/mini-mart located on Niagara Street in the City of Buffalo.  He also was involved on a daily basis in the Buffalo office of Mainstreethost.com, whose office is located at 450 Niagara Falls Boulevard, Tonawanda, New York.

63.     Mr. Geiger's personal involvement is essential to the success of G&G Petroleum and Mainstreethost.com.   Those businesses employ close to 100 Western New Yorkers.

64.     In United States v. Milikowsky, 65 F.3d 4 (2d Cir. 1995) the Second Circuit had occasion to determine whether the facts under consideration comprised such "extraordinary circumstances" falling outside the heartland envisioned by the Sentencing Guidelines.   In Milikowsky, supra, the Court noted that what distinguished Milikowsky's circumstances from others was the extraordinary impact that the loss of his daily involvement in his business would have on his business and, consequently, on his employees.

65.     The Court noted that it had reviewed unrebutted letters and testimony from family members, employees, business associates, and a creditor attesting to the "indispensability" that the defendant had to his business.  The Court found that the record allowed the Court to conclude that the defendant was the only individual with the knowledge, skill, experience and relationships to run his business.  The Court found that Milikowsky was the sole buyer of steel, the only person with the requisite ability and contacts to buy steel at competitive rates, the most successful seller, and the person who dealt with the customers and suppliers.  As a consequence the Court found:

> The record allowed the Court to conclude, additionally, that Milikowsky's daily involvement at Jordan is necessary to ensure the continuing viability of Prospect, the steel pail company.  Milikowsky is the sole buyer of all the steel Prospect uses to make pails and, according to testimony, the cost advantage attributable to his steel buying expertise is virtually the only reason that Prospect remains a viable operation.

Milikowski, supra at 8.

66.     Likewise in United States v. Somerstein, 20 F.Supp.2d 454 (E.D.N.Y. 1998), the court found that the defendant who was indispensable to her business, should be afforded a downward departure.  The court noted that the defendant's business depended on her and its precarious financial condition would be greatly increased in her absence.  The court found that there were no other individuals suitable to assume the duties of the defendant in her absence and, therefore, incarceration of the defendant would have imposed a grave hardship on the employees and, with reasonable certainty, would leave them jobless.

67.     It is interesting to note that in determining that a departure was warranted, the court took note of the defendant's exceptional work record.  The court stated:

> Suffice it to say that she is an exceptionally hard working person who is devoted to her profession.   When on the job, she apparently works around the clock.

68.     In so holding, the court, relying on United States v. Big Crow, 898 F.2d 1326 (8th Cir. 1990), noted that a departure could be granted as a result of a defendant's excellent employment history, solid community ties and consistent efforts to lead a decent life under difficult circumstances.

69.     The facts concerning Mr. Gerace's and Mr. Geiger's extensive involvement in numerous business enterprises justified a departure pursuant to §5K2.0 and Milikowsky,

supra.  In the opinion of both defense counsel, the Court misapprehended its power to depart

under the Milikowsky decision.  It appeared as though the Court was of the inaccurate belief that

a business had to be losing money as a prerequisite to granting relief under the Milikowsky

decision.  As such, it is apparent that the Court misapprehended its power and this issue should

be reconsidered subsequent to appeal.

### 3.      Restitution

70.     Both Plea Agreements acknowledge the Court's power to direct restitution

in the amount of $3,600.00.

71.     Prior to sentencing, the Court properly informed the parties that it was

considering imposing restitution liability upon Mr. Gerace and Mr. Geiger for amounts

previously admitted to by convicted co-conspirators, Brandon DelPrince and Anthony Gugino.

72.     The Court expressly grounded its intention upon the Second Circuit

decision in United States v. Boyd, 222 F.3d 47.

73.     Mr. Gerace and Mr. Geiger incorporate their defense submission on

restitution, a copy of which is attached as Exhibit A.

74.     The defendants respectfully submit that they have a non-frivolous

appealable issue concerning the joint and several restitution liability imposed at sentencing.

75.     Both defendants would agree to the entry of an order under Rule 38 of the

Federal Rules of Criminal Procedure restraining them from liquidating any assets of a value of

$50,000.00 or greater as a condition of the Court's staying enforcement of the restitution portion

of its sentence.

## CONCLUSION

76.     Mr. Gerace and Mr. Geiger submit that there are substantial questions of law and fact which should be addressed in the Second Circuit.  Accordingly, they request that this stay application be granted.

DATED:   September 15, 2006

Respectfully submitted,

s/Paul J. Cambria, Jr.
PAUL J. CAMBRIA, JR.
ROGER W. WILCOX, JR.
LIPSITZ GREEN SCIME CAMBRIA LLP
 Attorneys for Defendant,
   PETER GERACE
Office and Post Office Address
42 Delaware Avenue, Suite 300
Buffalo, New York  14202
(716) 849-1333

s/Joseph M. LaTona
JOSEPH M. LaTONA
Attorney for Defendant,
   MICHAEL GEIGER
Office and Post Office Address
716 Brisbane Building
403 Main Street
Buffalo, New York  14203
(716) 842-0416

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                        Plaintiff,

          vs.
                                                        Case No. 00-CR-009S

PETER GERACE and
MICHAEL GEIGER,

                                        Defendants.

---

## DEFENSE SUBMISSION ON RESTITUTION

                                        Respectfully submitted,

PAUL J. CAMBRIA, JR.                    JOSEPH M. LaTONA
MICHAEL P. STUERMER                     Attorney for Defendant,
LIPSITZ, GREEN, FAHRINGER,                 MICHAEL GEIGER
   ROLL, SALISBURY & CAMBRIA LLP        Office and Post Office Address
Attorney for Defendant,                 716 Brisbane Building
   PETER GERACE                         403 Main Street
Office and Post Office Address          Buffalo, New York  14203
42 Delaware Avenue, Suite 300           (716) 842-0416
Buffalo, New York  14202
(716) 849-1333

## PRELIMINARY STATEMENT

In an order dated April 13, 2006, the Court requested submissions from the parties regarding restitution.

This memorandum is submitted on behalf of Mr. Gerace and Mr. Geiger.

## RESTITUTION STANDARDS

An award of restitution is appropriate only for losses actually caused by the conduct comprising the offense of conviction. Hughey v. United States, 495 U.S. 411, 110 S.Ct. 1979; United States v. Silkowski, 32 F.3d 682 (2d Cir. 1994).

While Mr. Geiger and Mr. Gerace were both convicted of conspiring with one another and with Anthony Gugino and Brandon DelPrince, the scope of their conspiracy was much more limited than the conspiracy admitted by DelPrince and Gugino.

The factual basis portion of the Geiger/Gerace plea agreements was limited to the agreement to utilize a rebuttal pitch entitled "Justifying the Price." As recited in the factual basis, a rebuttal pitch would be utilized only in the event that "a potential customer was hesitant to purchase" [Plea Agr., ¶ 6, p. 4].

In their plea agreements, Mr. Geiger and Mr. Gerace agreed that the loss actually incurred by using the rebuttal pitch was $3,600.00 [Plea Agr., ¶ 2, p. 2].

Nothing is before this Court to establish that the use of the "Justifying the Price" rebuttal pitch caused any loss in excess of $3,600.00.

The Gugino/DelPrince plea agreements make no reference to the "Justifying the Price" rebuttal pitch.   Similarly, neither of the informations charging Mr. DelPrince or Mr. Gugino made reference to that rebuttal pitch.

In fact, the factual basis of the Gugino and DelPrince plea agreements recite conduct that is both much greater in scope and which involves an unindicted, unnamed other "reload salesman."

The factual basis portion of the DelPrince plea agreement encompasses his activities both as a "front salesman" and as a "reload salesman" [DelPrince Plea Agr., pp. 3-5]. In his plea agreement, Mr. DelPrince expressly admitted having misled potential customers in both of his capacities as a front and reload sales person. Id.  Specifically, DelPrince admitted that in making reload sales, he ". .  used various other misleading and 'trust me' statements he learned from at least one other reload salesman known to the Government . . ." [DelPrince Plea Agr., p. 4]

In the factual basis portion of the Gugino plea agreement, Gugino admitted to conduct that he had committed as a reload salesman [Gugino Plea Agr., pp. 3-6].

That plea agreement provides, in pertinent part, that:

> "[H]owever, in making reload sales, the defendant used various other misleading and 'trust me' statements he learned from at least one other reload salesman known to the Government . . ." [Gugino Plea Agr., p. 4].

According to Mr. Geiger's and Mr. Gerace's probation department reports, Brandon DelPrince admitted liability for restitution to 54 separate victims [Geiger PSR, ¶ 17, p. 5; Gerace PSR, ¶ 17, pp. 5-6].  The reports also indicated that three of those 54 victims were

2

on a list of twelve victims which the Government has attributed to Mr. Geiger and Mr. Gerace [Geiger PSR, ¶ 18, p. 6; Gerace PSR, ¶ 18, p. 6].

The probation reports state that Anthony Gugino assumed liability for restitution to 47 separate victims [Geiger PSR, ¶ 17, p. 5; Gerace PSR, ¶ 17, pp. 5-6].

The reports go on to state that six of the 47 victims attributed to Mr. Gugino were also attributed to Mr. Geiger and Mr. Gerace on the Government prepared list encompassing twelve victims [Geiger PSR, ¶ 18, p. 6; Gerace PSR, ¶ 18, p. 6].

Obviously, the Government's investigation in this case revealed many fewer alleged victims that are attributable to Mr. Geiger or Mr. Gerace than those that were attributable to Mr. Gugino and Mr. DelPrince for restitution purposes.

In fact, as set forth in the Government's Statement of Factors Regarding Sentencing, the Government seeks restitution of $3,600.00 -- the exact amount set forth in the plea agreements.

## CO-CONSPIRATOR RESTITUTION LIABILITY

The Court order of April 13, 2006 referenced the Second Circuit decision in United States v. Boyd, 222 F.3d 47. Boyd is distinguishable both factually and legally and it is predicated upon restitution statutes which do not apply to this case. Significantly, in Boyd co-defendant Peck proceeded to trial so that the Court's restitution determination was predicated upon conduct whose existence was established beyond a reasonable doubt. Indeed, the Boyd court expressly noted that,

> "[T]he jury necessarily found, beyond a reasonable doubt, that Peck was liable for substantive crimes committed by co-conspirators under Pinkerton v. United States, 328 U.S.

**3**

640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) . . . ."  222 F.3d
at 51.

Also, all of the defendants were charged in each count of the indictment.
222 F.3d at 49.

The Boyd court also noted that the Pinkerton determination by the jury also
included findings that Peck acted pursuant to the "common plan of the conspiracy" and that she
"could reasonably have foreseen that a co-conspirator would commit the substantive offense."
222 F.3d at 51. The court furthermore held that the jury necessarily found that the losses upon
which the restitution order was based were reasonably foreseeable by Peck. Id.

In addition, the Boyd court relied upon the mandatory restitution provisions of
18 U.S.C. §3663A and 18 U.S.C. §2327. Neither of those statutes apply to this case. 18 U.S.C.
§3663A became effective in 1996, well after the conspiracy ended. 18 U.S.C. §2327 was not
applicable to conspiracy cases until an amendment in 1998.

The restitution issue in this case is governed by the provisions of 18 U.S.C. §3663
[Plea Agr., ¶ 2, p. 2]. Under that statute, restitution may be awarded only to an individual
directly harmed by the defendant's criminal conduct . . . ."  18 U.S.C. §3663(a)(1)(A)(B).

4

## CONCLUSION

Obviously, the defendants may be held responsible for the amount set forth in the plea agreement. It is respectfully submitted that any amount in excess of that figure would have to be based upon specific individualized findings under the legal authorities set forth above.

**DATED:**      June /4, 2006

Respectfully submitted,

PAUL J. CAMBRIA, **JR.**
MICHAEL **P. STUERMER**
LIPSITZ, GREEN, **FAHRINGER,**
 ROLL, SALISBURY & CAMBRIA LLP
Attorney for Defendant,
 PETER GERACE
Office and Post Office Address
42 Delaware Avenue, Suite 300
Buffalo, New York  14202
(716) 849-1333

JOSEPH **M. LaTONA**
Attorney for Defendant,
 MICHAEL GEIGER
Office and Post Office Address
716 Brisbane Building
403 Main Street
Buffalo, New York  14203
(716) 842-0416

5

## CERTIFICATE OF SERVICE

IT IS HEREBY certified that the foregoing document was filed on a 3½ inch diskette in .PDF format, via hand delivery, with the following:

**CLERK OF THE COURT**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
68 Court Street
Buffalo, New York  14202

IT IS HEREBY further certified that a true copy of the foregoing document was served, via hand delivery, upon the following:

**ANTHONY M. BRUCE, ESQ.**
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York  14202

IT IS HEREBY further certified that a true copy of the foregoing document was served, via United States Postal Service - First Class Mail, upon the following:

**PAUL J. CAMBRIA, JR., ESQ.**
**MICHAEL P. STUERMER, ESQ.**
42 Delaware Avenue, Suite 300
Buffalo, New York  14202

this 14th day of June, 2006.

SANDRA LEE WRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                        Plaintiff,

                                                                    Case No. 00-CR-009S

            vs.

PETER GERACE and MICHAEL GEIGER,

                                        Defendants.

_____

### CERTIFICATE OF SERVICE


        I hereby certify that on September 15, 2006, I electronically filed the Defendants' Notice
of Motion and Affidavit on Behalf of the interested parties with the Clerk of the District Court
using the CM/ECF system.

        I hereby certify that on September 15, 2006, a copy of the foregoing was also delivered to
the following using the CM/ECF System.

            TERRENCE P. FLYNN, ESQ.
            United States Attorney for the
            Western District of New York
            138 Delaware Avenue
            Buffalo, New York 14202
            Attn:  ANTHONY J. BRUCE, ESQ.
                Assistant United States Attorney


DATED:        Buffalo, New York
              September 15, 2006


                                        s/Erin M. Martin
                                        Erin M. Martin